UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
APARTMENT OWNERS ADVISORY
COUNCIL; COOPERATIVE AND
CONDOMINIUM ADVISORY COUNCIL; 35
CLINTON PLACE LLC; GRASSY SPRAIN
OWNERS CORP.; DILARE, INC.; THE
CRAFT BUILDING DEVELOPMENT FUND
CORP.; SEVEN PINES ASSOCIATES, L.P.;
and 512 NSSKE LLC,
　　　　　　　　　　　　Plaintiffs,

v.

LAWRENCE K. MARKS, as Chief
Administrative Judge of the Courts of the State
of New York,
　　　　　　　　　　　　Defendant.
--------------------------------------------------------------x

**OPINION AND ORDER**

21 CV 10175 (VB)

Briccetti, J.:

　　Plaintiffs Apartment Owners Advisory Council ("AOAC"); Cooperative and Condominium Advisory Council ("CCAC"); 35 Clinton Place LLC ("35 Clinton"); Grassy Sprain Owners Corp. ("Grassy Sprain"); DiLaRe, Inc. ("DiLaRe"); The Craft Building Development Fund Corp. ("Craft Building"); Seven Pines Associates, L.P. ("Seven Pines"); and 512 NSSKE LLC ("512 NSSKE") bring this action against the Honorable Lawrence K. Marks, Chief Administrative Judge of the Courts of the State of New York. Plaintiffs allege the tenant protections enacted by the State of New York in response to the COVID-19 pandemic, which were implemented by defendant, are unconstitutionally vague and violate plaintiffs' First and Fourteenth Amendment rights.

　　Now pending is defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. #55).

　　For the following reasons, the motion is GRANTED.

1

**BACKGROUND**

I.    <u>Tenant Protections in New York During the COVID-19 Pandemic</u>

In response to the COVID-19 pandemic, the New York State legislature enacted a variety of protections against eviction for residential and commercial tenants.

On December 28, 2020, the legislature passed the COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020 ("CEEFPA"), which was designed to prevent evictions for tenants experiencing financial hardships during the pandemic.

Two provisions of CEEFPA are relevant here. First, when a tenant self-certified she was experiencing a hardship because of the pandemic, CEEFPA prohibited landlords from commencing any eviction proceeding, stayed any pending eviction proceeding, and stayed execution of any judgment of eviction. CEEFPA, pt. A, §§ 4–6, 8. A tenant could self-certify she was experiencing a hardship by completing a form "hardship declaration," which landlords were required to distribute to tenants. <u>Id</u>. pt. A, §§ 4, 5(1).

Second, CEEFPA stayed all eviction proceedings when the tenant had defaulted. For landlords to procure or enforce any judgment of eviction when the tenant defaulted, landlords had to request a hearing and serve notice of any hearing on the tenant. CEEFPA, pt. A, § 7. CEEFPA also provided:

> If a default judgment has been awarded prior to the effective date of this act, the default judgment shall be removed and the matter restored to the court calendar upon the respondent's written or oral request to the court either before or during such hearing and an order to show cause to vacate the default judgment shall not be required.

<u>Id</u>.

CEEFPA was challenged on constitutional grounds, and on August 12, 2021, the Supreme Court enjoined the provisions regarding hardship declarations as violative of landlords' due-process rights. <u>Chrysafis v. Marks</u>, 141 S. Ct. 2482, 2482 (2021).

CEEFPA expired on August 31, 2021, and on September 1, 2021, the legislature enacted a new law, "S50001."

Relevant here, S50001 introduced a hearing process for landlords to challenge tenants' hardship declarations "to address the Supreme Court's due process concern, and to extend and strengthen the protections in the law." S50001 § 2. Specifically, S50001 provided that landlords could challenge hardship declarations by filing a motion "attesting a good faith belief that the respondent has not experienced a hardship," upon which the court would hold "a hearing to determine whether to find the respondent's hardship claim invalid." S50001 pt. B, subpt. A, § 10(1) (commercial tenants); accord id. pt. C, subpt. A, § 10(a) (residential tenants).

S50001 also continued the hearing requirement for proceedings on default. For residential tenants, the law further vacated all default judgments entered between August 13, 2021, and the date of the law's passage. S50001 pt. C, subpt. A, § 5. Again, the law stated that in cases in which a default judgment was vacated, the case could be "restored to the court calendar upon the respondent's written or oral request to the court either before or during such hearing and [that] an order to show cause to vacate the default judgment shall not be required." Id.

S50001 expired on January 15, 2022. S50001 pt. E, § 2. Following the expiration of S50001, Judge Marks issued a memorandum regarding the law's continuing effect on eviction proceedings. (Doc. #62 exhibit 2). According to the memorandum, "[d]espite the expiration of [S50001], a Hardship Declaration shall serve as prima facie evidence establishing a rebuttable presumption that a tenant is experiencing financial hardship in a proceeding as a defense under any[ ] local or state law." (Id. at 3). In addition, the memorandum explains:

> The expiration of [S50001] further removes the requirement that the court must first hold a hearing upon motion of the petitioner before issuing a default judgment

3

   authorizing an eviction in a residential eviction matter or authorizing the enforcement of an eviction pursuant to a default judgment. No judgment or warrant shall be issued on default without a motion to the court by the petitioner.

(Id.).

II. Procedural History

This action was commenced on December 1, 2021, by eight plaintiffs: two membership organizations (the "Organizational Plaintiffs") and six landlords (the "Individual Plaintiffs").

The Organizational Plaintiffs are AOAC and CCAC. AOAC is a membership organization for managing agents and owners of apartment buildings in Westchester County. (Am. Compl. ¶¶ 5–6). CCAC is a membership organization for managing agents and owners of co-ops and condominiums in Westchester County. (Id. ¶¶ 5, 7). AOAC and CCAC allege they "expend and have expended funds and monetary support to their members in matters involving [CEEFPA and S50001] and thus, have less funds for other purposes." (Id. ¶ 5).

The Individual Plaintiffs are 35 Clinton, Grassy Sprain, DiLaRe, Craft Building, Seven Pines, and 512 NSSKE, each a landlord in Westchester County.

35 Clinton, DiLaRe, Seven Pines, and 512 NSSKE allege they leased property to tenants they sought to evict during the pandemic, but the tenants filed hardship declarations which these plaintiffs assert they cannot challenge in good faith. (See Am. Compl. ¶¶ 8(a), (c)–(d), (f)). These plaintiffs also allege the filing of these hardship declarations created a presumption of hardship that is either difficult or impossible to overcome and, as a result, they will not be able to evict their delinquent tenants. (Id.).

Grassy Sprain alleges it owns a large co-op that ordinarily has a live-in superintendent. According to Grassy Sprain, during the pandemic, the live-in superintendent was terminated but refused to leave his apartment. Grassy Sprain alleges it has commenced an eviction proceeding, but the former superintendent has defaulted and Grassy Sprain "cannot get a trial due to the court

4

delays and the inability to get a hearing." (Am. Compl. ¶ 8(b)). It does not allege the former superintendent filed a hardship declaration.

Craft Building alleges one of its tenants stopped paying rent in April 2021, and that it obtained a default judgment against the tenant on August 31, 2021. Craft Building submitted a proposed judgment to the New Rochelle City Court, but the court returned the judgment unexecuted with the following note:

> Declined to sign pursuant to C.E.E.F.P.A. §5 which indicates, in relevant part, "[i]f a default judgment has been awarded . . . between August 13, 2021 and [September 2, 2021], the default judgment shall be vacated. . . . " Default judgment was awarded on August 31, 2021.

(Am. Compl. ¶ 8(e)). Craft Building renewed its motion for default judgment on March 23, 2022 (Doc. #66-1), and default judgment was entered on April 12, 2022. (Doc. #66 ¶ 12).

On December 3, 2021, plaintiffs moved by Order to Show Cause for a preliminary injunction in this action. (Doc. #25). On January 13, 2022, the Court denied the motion. (Doc. #45).

Plaintiffs filed an amended complaint on February 28, 2022. Although their amended complaint is far from clear, plaintiffs appear to assert three claims. First, plaintiffs assert the hardship declaration and default-judgment provisions in CEEFPA and S50001 are unconstitutionally vague. (See Am. Compl. ¶¶ 37–48). Second, plaintiffs assert these provisions violate their procedural due-process rights. (See id. ¶¶ 50–56). Third, plaintiffs assert these provisions violate their First Amendment rights to access the courts and petition the government. (See id. ¶¶ 58–64). As relief for each claim, plaintiffs appear to seek declaratory and injunctive relief. (See id. ¶¶ 48, 56, 65).[1]

---

[1] The amended complaint does not cite 42 U.S.C. § 1983 or any other federal statutory basis for plaintiffs' claims. Nevertheless, the claims appear to be brought pursuant to Section

**DISCUSSION**

I.       Standard of Review

A district court must dismiss an action pursuant to Rule 12(b)(1) "for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it." Conn. Parents Union v. Russell-Tucker, 8 F.4th 167, 172 (2d Cir. 2021).[2]  For example, a case is properly dismissed under 12(b)(1) "when the plaintiff lacks constitutional standing to bring the action," id., or "when a case becomes moot." Doyle v. Midland Credit Mgmt., Inc., 722 F.3d 78, 80 (2d Cir. 2013) (per curiam).

When deciding a Rule 12(b)(1) motion, the Court "must accept as true all material factual allegations in the complaint, but [shall] not . . . draw inferences from the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).  The Court may consider materials outside the pleadings, such as affidavits. Id.  In addition, the Court may also consider materials subject to judicial notice, including court filings in other litigation, not for the "truth of their contents" but for the fact that those filings were made and other litigation exists. See Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) (collecting cases).

II.      Standing

Defendant contends plaintiffs do not have standing to bring this action.

The Court agrees with respect to AOAC, CCAC, 35 Clinton, Grassy Sprain, DiLaRe, 512 NSSKE, and Seven Pines; but not with respect to Craft Building.

---

1983, which creates a cause of action against state officials who deprive citizens or other persons of rights secured by the Constitution and laws of the United States.

[2]       Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

A.     Legal Standard

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance." Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n, 747 F.3d 44, 48 (2d Cir. 2014).  To establish standing in federal court, a plaintiff must demonstrate it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

An organizational plaintiff may establish standing "in one of two ways":  (i) by "su[ing] on behalf of its members"; or (ii) by suing "in its own right to seek judicial relief from injury to itself." N.Y. C.L. Union v. N.Y.C. Transit Auth., 684 F.3d 286, 294 (2d Cir. 2012).

For organizational or individual plaintiffs to demonstrate an injury in fact, they must establish they "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Moya v. U.S. Dep't of Homeland Sec., 975 F.3d 120, 129 (2d Cir. 2020).  The speculative fear of a hypothetical injury does not constitute an injury in fact. Clapper v. Amnesty Int'l USA, 568 U.S. 398, 417–18 (2013).

An organization suing in its own right establishes it suffered an injury in fact by showing "a perceptible impairment of [its] activities." Moya v. U.S. Dep't of Homeland Sec., 975 F.3d at 129.  To make this showing, an organization may demonstrate a defendant's conduct "impede[s] . . . the organization's ability to carry out its responsibilities," Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 110 (2d Cir. 2017), or forces the organization to divert resources away from "its core activities." New York v. U.S. Dep't of Homeland Sec., 969 F.3d 42, 60–61 (2d Cir. 2020), cert. dismissed, 141 S. Ct. 1292 (2021).

In contrast, an organization does not demonstrate a perceptible impairment of its activities by alleging a defendant's conduct causes harm to its "abstract social interests." Conn. Parents Union v. Russell-Tucker, 8 F.4th at 175.

B.  Application

1.  Organizational Plaintiffs

Here, the Organizational Plaintiffs have not adequately alleged their activities were perceptibly impaired, and thus have not pleaded an injury in fact.

First, the Organizational Plaintiffs do not sufficiently show their ability to perform core activities is impeded. The Organizational Plaintiffs allege "[t]hey advocate on behalf of their members before" state and local governments and offer their members "a variety of services, including advice related to regulatory compliance and assistance to members who are facing legal challenges." (Am. Compl. ¶¶ 5–7). But the Organizational Plaintiffs do not demonstrate CEEFPA or S50001 made it more difficult for them to advocate for or provide services to their members.

For example, in Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, the Second Circuit concluded an organization possessed standing to challenge a town ordinance because the organization articulated multiple ways the ordinance impeded its work. 868 F.3d at 110–11. The challenged ordinance prohibited "any person standing within or adjacent to any public right-of-way within the [t]own" from "stop[ping] or attempt[ing] to stop any motor vehicle utilizing said public right-of-way for the purpose of soliciting employment of any kind from the occupants of said motor vehicle." Id. at 107. The plaintiff organization worked to organize Latino immigrant workers, and alleged the ordinance forced such workers to disburse. Id. at 110. This, the organization alleged, meant it would "inevitably face increased

difficulty in meeting with and organizing those laborers," and would expose its organizers to criminal prosecution because law enforcement was "likely to confuse the conduct of [plaintiff]'s activists with that of the day laborers." Id. at 110–11. Here, in contrast, the Organizational Plaintiffs do not allege CEEFPA or S50001 creates any barriers to their ability to reach or offer services to their members.

Second, the Organizational Plaintiffs do not sufficiently allege they were forced to divert resources away from their current activities. The Organizational Plaintiffs allege they "expend and have expended funds and monetary support to their members in matters involving [CEEFPA and S50001] and thus, have less funds for other purposes." (Am Compl. ¶ 5). This conclusory allegation is insufficient to establish standing.

For example, in New York v. U.S. Department of Homeland Security, the Second Circuit determined the plaintiff organizations had standing to challenge a federal regulation because the organizations submitted detailed declarations about how the regulation required them to hire additional staff, reassign current staff, create new programs, redesign existing programs, and publish new public service announcements. 969 F.3d at 61 & n.18. Here, the Organizational Plaintiffs do not offer evidence of any comparable changes to their operations or services purportedly required by CEEFPA or S50001.

Moreover, the Organizational Plaintiffs do not explain how CEEFPA or S50001 meaningfully changed their work. Instead, it appears they engaged in more of the same work as a result of CEEFPA and S50001. The Organizational Plaintiffs allege their mission is to assist members with regulatory compliance and legal proceedings, and that, following the enactment of CEEFPA and S50001, they assisted members with regulatory compliance and legal proceedings with respect to CEEFPA and S50001. In other words, the Organizational Plaintiffs have not

alleged they had to divert resources from their core activities at all.  See, e.g., Conn. Citizens Def. League, Inc. v. Lamont, 6 F.4th 439, 447 (2d Cir. 2021) (advocacy organization lacked standing to challenge an executive order when the organization's advocacy in opposition to the order was "not a departure from [its] usual activities").

Accordingly, the claims of AOAC and CCAC must be dismissed.

2. Individual Plaintiffs

Here, only Craft Building has sufficiently alleged standing.

First, Grassy Sprain has not demonstrated its injury was traceable to CEEFPA or S50001.  Grassy Sprain alleges it is seeking to evict the former live-in superintendent from the co-op it operates, but it does not allege the former superintendent has filed a hardship declaration or that Grassy Sprain has obtained a default judgment against him which was vacated or it is otherwise unable to enforce.  Thus, Grassy Sprain has not alleged an injury traceable to CEEFPA or S50001 and therefore has not demonstrated standing to challenge them.

Second, 35 Clinton, DiLaRe, Seven Pines, and 512 NSSKE have not demonstrated they suffered a cognizable injury sufficient to confer standing.  Each entity alleges it is seeking to evict a tenant that has filed a hardship declaration, which creates a rebuttable presumption of hardship.  Each entity then contends the rebuttable presumption of hardship is impossible to overcome because the relevant facts regarding its tenants' hardship, or lack thereof, are not within its possession.  This, however, is contradicted by the record.  In support of their motion for a preliminary injunction, principals of most of these plaintiffs submitted declarations with multiple facts regarding their tenants' finances.  (See, e.g., Docs. ##26-12 ¶ 6 (512 NSSKE's tenants "are wealthy people" and "have significant financial resources at their disposal"), 26-13 ¶¶ 5, 7 (DiLaRe's tenant "is still employed" and "appears to have sufficient funds to pay the

rent"), 26-14 ¶ 6 (35 Clinton's tenant "drives a Bentley and a Mercedes")). Further, these plaintiffs all allege they have not attempted to rebut the presumption; thus, their alleged injuries are based on a speculative fear that any such effort would be unsuccessful, which is insufficient to confer standing. Clapper v. Amnesty Int'l USA, 568 U.S. at 417–18. Therefore, 35 Clinton, DiLaRe, Seven Pines, and 512 NSSKE have not established injuries in fact.

Craft Building has, however, demonstrated it suffered an injury in fact traceable to S50001. Craft Building alleges it obtained a default judgment against a tenant which was then vacated pursuant to S50001, and that it suffered harm as a result. Thus, Craft Building has standing to proceed.

Accordingly, the claims of 35 Clinton, Grassy Sprain, DiLaRe, Seven Pines, and 512 NSSKE must be dismissed.

III. Mootness

Defendant further contends plaintiffs' claims must be dismissed as moot.

Only Craft Building has standing to proceed, and the Court agrees its claims are moot.

"Mootness is a doctrinal restriction stemming from the Article III requirement that federal courts decide only live cases or controversies." In re Zarnel, 619 F.3d 156, 162 (2d Cir. 2010). "There is . . . no case or controversy, and a suit becomes moot, when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Chafin v. Chafin, 568 U.S. 165, 172 (2013). For example, "if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot." Uzuegbunam v. Preczewski, 141 S. Ct. 792, 796 (2021).

Here, Craft Building's claims, which relate only to the default-judgment provisions of S50001, are moot.

11

First, to the extent Craft Building alleges S50001 is unconstitutionally vague, such claim is moot because the statute has expired. See Burke v. Barnes, 479 U.S. 361, 363–64 (1987) (challenge to a bill was "mooted when that bill expired by its own terms"). Thus, to the extent Craft Building asserts a void-for-vagueness claim, it must be dismissed as moot.

Second, Craft Building's other claims arise from its purported inability to obtain a default judgment of eviction in local court, and these are moot because, subsequent to filing the amended complaint, it obtained the default judgment. (Doc. #66 ¶¶ 11–12). In other words, "[i]t would thus be impossible for the Court to grant any effectual relief whatever were [Craft Building] to prevail." See, e.g., United States v. Brito, 2022 WL 761529, at *1 (2d Cir. Mar. 14, 2022) (summary order) (dismissing appeal of federal sentence as moot because "that sentence has been served in full").

Accordingly, Craft Building's claims must be dismissed as moot.[3]

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is directed to terminate the motion (Doc. #55) and close this case.

Dated: September 19, 2022
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[3] In light of this conclusion, the Court does not reach whether plaintiffs' claims are also barred by the Eleventh Amendment.